**WELTRONIC COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Local 155, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America—UAW, Intervenor.**

**LOCAL 155, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA—UAW, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 19191, 19446.**

United States Court of Appeals Sixth Circuit.

Dec. 16, 1969.

Bruce D. Carey, Carey & Carey, Detroit, Mich., for Weltronic Co., Bruce D. Carey and Frederick A. Carey, Detroit, Mich., of counsel.

Nancy M. Sherman, N.L.R.B., Washington, D. C., for N.L.R.B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prévost, Asst. Gen. Counsel, Nancy M. Sherman, Jerome N. Weinstein, Attys., N.L.R.B., Washington, D. C., on brief.

Stanley Lubin, Detroit, Mich., for Local 155, John A. Fillion, Stanley Lubin, Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, COMBS, Circuit Judge, and TAYLOR, District Judge.*

COMBS, Circuit Judge.

The Weltronic Company has petitioned this Court to review an order of the

---

* Honorable Robert L. Taylor, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

National Labor Relations Board holding that it has violated Section 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1) and (5). The Board requests enforcement of its order. 173 NLRB No. 40. Local 155— UAW has intervened in this action [No. 19,191]. The union has also filed a separate petition to review that portion of the Board's order which failed to grant relief sought by the union [No. 19,446].

The company is engaged primarily in the manufacture and sale of resistance welding controls. Since about 1960, it has developed a line of "plant central" equipment which is used to monitor and control manufacturing operations. The company, or its subsidiaries, has manufactured the plant central equipment at six different locations in Michigan and Canada. From 1965 until 1967, some of this work was performed at the company's Eight Mile Road plant in Southfield, Michigan. Employees at the Eight Mile plant were represented by Local 155–UAW and were protected by a collective bargaining agreement executed between the union and the company in 1964. The union did not represent Weltronic employees at any of its other plants. The company, in April, 1967, moved its plant central wiring and electronic assembly work out of the Eight Mile plant to its new Telegraph Road plant some three miles away. The move was accomplished without written notice to the union and no employees were transferred from the Eight Mile plant to the Telegraph plant. No employee was laid off as a result of the move but some fourteen employees at the Eight Mile plant were already on lay-off status when the move took place.

The collective bargaining agreement contained these relevant provisions:

### ARTICLE I
#### Recognition

\* \* \* \* \* \*

Section 1. (b) In the event the Company discontinues its operations at the present site and moves to another location in the Detroit Metropolitan Area, seniority employees who can and are willing to accept work at the new location will be transferred to such new location with all their seniority prevailing rates of pay and the prevailing contract with the AFL–CIO– UAW and Local 155.

\* \* \* \* \* \*

Section 4. The Union agrees that the Management of the Company has the right to manage the affairs of the business, to control its properties, and equipment, and to direct the working forces of the Company in accordance with and subject to the terms of this Agreement. Said functions of Management include the right to hire, discharge or discipline for just cause, to establish new jobs and discontinue jobs, maintain discipline and efficiency of employees, to determine the type of products to be manufactured, the location of plants, plan scheduling of production, methods, processes, and means of manufacturing.

\* \* \* \* \* \*

### ARTICLE IV
#### Seniority

\* \* \* \* \* \*

Section 11. When new jobs are created or vacancies occur, the oldest employees in point of service shall be given preference in filling such new job or vacancy so far as consistent with the ability of the employee to perform the services required. All new jobs will be posted forty-eight (48) hours before such vacancy shall be filled.

The Board held that the company violated Section 8(a) (5) and (1) of the Act by transferring unit work from its Eight Mile plant to its Telegraph plant without first notifying the union and giving it an opportunity to bargain; also that the company violated the same two sections by treating the plant central work as not being covered by the bargaining agreement, by unilaterally changing the conditions and terms of employment, and by refusing to negotiate with the union in regard to trans-

ferring employees from the Eight Mile plant to the Telegraph plant.

The Board's order requires the company to bargain with the union concerning the transfer of the plant central work, to make whole any employees who have suffered loss, and to post appropriate notices. The company is given the option of moving the plant central work back to the Eight Mile plant or retaining it at the Telegraph plant so long as it otherwise complies with the good faith bargaining contemplated by the remedial order.

The company contends that the removal of the plant central work was a managerial prerogative about which it was under no duty to bargain either under the Act or by the terms of the collective bargaining agreement. It contends alternatively that it did attempt to bargain with the union even though it had no legal duty to do so, and that the Board's finding to the contrary is not supported by the evidence.

■■ We agree with the Board that the company had the statutory duty to give the union the opportunity to bargain about the removal of the plant central work under the circumstances here shown. The preservation of unit work has a significant impact on wages, hours, and "other terms of employment" referred to in Section 8(a) (5) of the Act. National Woodwork Manufacturers Ass'n v. NLRB, 386 U.S. 612, 640–642, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967); Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 209, 85 S.Ct. 398, 13 L.Ed. 2d 233 (1964). We also agree that the bargaining agreement cannot properly be construed as a relinquishment of those rights. While the Board is not empowered to adjudicate the rights of parties covered under a collective bargaining agreement, it does have the right to determine by reference to the agreement whether one of the parties has agreed to relinquish a statutory safeguard. NLRB v. C & C Plywood Corp., 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967). That is all the Board did here.

■■ The duty to bargain came into play prior to removal of the work. East Bay Union of Machinists, Local 1304, etc., v. NLRB, 116 U.S.App.D.C. 198, 322 F.2d 411, 415 (D.C. Cir. 1963), aff'd sub nom., Fibreboard Paper Products Corp. v. NLRB, supra. The Board's conclusion that the company refused to bargain is supported by substantial evidence, especially in view of the company's admission that no written notice was given of the company's intention to transfer the work. The failure to give notice was consistent with the company's position that removal of the plant central work was a management decision about which it was not required to bargain.

■ The company also contends that there is no evidence that removal of plant central work adversely affected employees at the Eight Mile plant. This is a question to be determined by the Board under the compliance section of the Act.

■ The union insists that the Board's order is not adequate in that it does not require return of the plant central work to the Eight Mile plant. Since the order does not appear to be either arbitrary or clearly inadequate, we see no reason to depart from the general rule of allowing the Board wide latitude in shaping remedies.

■ The union contends that the Board should have sustained its motion to reconsider the Board's order or, in the alternative, to reopen the proceeding for the taking of additional evidence. This argument is premised on the fact that shortly before the Board issued its order the union charged that the company had again, without notice, moved its wiring and electric assembly work on plant central equipment, this time to a plant located in Clare, Michigan, some 130 miles from the Eight Mile plant. The union also filed with the Regional Director a supplemental charge of unfair labor practice based on the second move.

The motion to reconsider or reopen was denied by the Board without reasons

being given. The union was advised by letter from the Regional Director that the processing of the supplemental charge would be held in abeyance pending this Court's action on the company's petition for review which had been filed a few days previously. We agree with the union that, under the Administrative Procedure Act, 5 U.S.C. § 551 et seq., the Board should have stated its reasons for denying the motion to reconsider or reopen. In view of the Board's silence on the subject, we will indulge the presumption that the motion was denied because the company had already filed in this Court its petition for review of the Board's order. We regard this as a valid reason for the Board's action and, since the supplemental charge filed by the union is still on file with the Regional Director awaiting this Court's action in the instant appeal, the rights of the union have not been prejudiced.

The Board's order will be enforced.